## No. 22-50732
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Mᵢ Fᴀᴍɪʟɪᴀ Vᴏᴛᴀ; Mᴀʀʟᴀ Lᴏᴘᴇᴢ; Mᴀʀʟᴏɴ Lᴏᴘᴇᴢ; Pᴀᴜʟ Rᴜᴛʟᴇᴅɢᴇ,
*Plaintiffs-Appellees*

v.

Kɪᴍ Oɢɢ,
*Defendant-Appellant*

OCA-Gʀᴇᴀᴛᴇʀ Hᴏᴜsᴛᴏɴ; Lᴇᴀɢᴜᴇ ᴏғ Wᴏᴍᴇɴ Vᴏᴛᴇʀs ᴏғ Tᴇxᴀs; REVUP-
Tᴇxᴀs; Tᴇxᴀs Oʀɢᴀɴɪᴢɪɴɢ Pʀᴏᴊᴇᴄᴛ; Wᴏʀᴋᴇʀs Dᴇғᴇɴsᴇ Aᴄᴛɪᴏɴ Fᴜɴᴅ,
*Plaintiffs-Appellees*

v.

Jᴏsᴇ A. Esᴘᴀʀᴢᴀ. Iɴ Hɪs Oғғɪᴄɪᴀʟ Cᴀᴘᴀᴄɪᴛʏ ᴀs Tᴇxᴀs Sᴇᴄʀᴇᴛᴀʀʏ ᴏғ
Sᴛᴀᴛᴇ (Aᴄᴛɪɴɢ); Eᴛ ᴀʟ,
*Defendants*

Kɪᴍ Oɢɢ,
*Appellant*

LULAC Tᴇxᴀs; Vᴏᴛᴇ Lᴀᴛɪɴᴏ; Tᴇxᴀs Aʟʟɪᴀɴᴄᴇ ғᴏʀ Rᴇᴛɪʀᴇᴅ Aᴍᴇʀɪᴄᴀɴs;
Tᴇxᴀs AFT,
*Plaintiffs-Appellees*,

v.

Jᴏsᴇ Esᴘᴀʀᴢᴀ; Eᴛ ᴀʟ,
*Defendant*

Kɪᴍ Oɢɢ,
*Appellant*

DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE; THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,
*Plaintiffs-Appellees*

v.

GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF TEXAS; ET AL,
*Defendants*

KIM OGG,
*Appellant*

---

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL RUTLEDGE,
*Plaintiffs-Appellees*

v.

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,
*Defendants*

KIM OGG,
*Appellant*

---

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
(No. 5:21-cv-844)

---

**APPELLEES' BRIEF**

---

Uzoma N. Nkwonta
*Counsel of Record*
Christopher D. Dodge
Graham W. White
Noah B. Baron
Michael B. Jones
ELIAS LAW GROUP LLP

250 Massachusetts Ave. NW
Suite 400
Washington, DC 20001
unkwonta@elias.law

December 16, 2022

*Counsel for Plaintiffs-Appellees LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT (additional counsel on back cover)*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees**

- LULAC Texas
- Voto Latino
- Texas Alliance for Retired Americans
- Texas AFT

**Counsel**

- Domingo A. Garcia (withdrawn)
- Daniela Lorenzo
- Elena Rodriguez Armenta
- Graham W. White
- John R. Hardin (withdrawn)
- Noah B. Baron
- Jonathan P. Hawley (withdrawn)
- Joseph N. Posimato
- Kathryn E. Yukevich (withdrawn)
- Haley Costello Essig (withdrawn)
- James A. Rodman
- Marc E. Elias
- Meaghan E. Mixon
- Uzoma N. Nkwonta
- Christopher D. Dodge
- Michael B. Jones
- Elias Law Group LLP
- Perkins Coie, LLP

**Plaintiffs**

- Friendship-West Baptist Church
- Anti-Defamation League Austin
- Southwest and Texoma Regions
- Texas Impact
- James Lewin

**Counsel**

- Sean Morales-Doyle
- Eliza Sweren-Becker
- Patrick A. Berry
- Andrew B. Garber
- Jasleen K. Singh

- Elizabeth Y. Ryan
- Paul R. Genender
- Matthew Berde
- Megan Cloud
- Alexander P. Cohen
- Brennan Center for Justice at NYU School of Law
- Weil, Gotshal, & Manges LLP

### Plaintiffs-Appellees

- Mi Familia Vota
- Marla Lopez
- Marlon Lopez
- Paul Rutledge

### Counsel

- Ben Clements
- Mark Bieter
- Bradley Prowant
- Laura E. Rosenbaum
- Wendy J. Olson
- Courtney M. Hostetler
- Elijah M. Watkins
- John Bonifaz
- Ronald A. Fein
- Sean Michael Lyons
- Free Speech for People
- Stoel Rives LLP
- Lyons & Lyons, PC

### Plaintiffs

- La Union Del Pueblo Entero
- Southwest Voter Registration Education Project
- Mexican American Bar Association of Texas
- Texas Hispanics Organized for Political Action
- JOLT Action
- William C. Velasquez Institute

### Counsel

- Nina Perales
- Julia R. Longoria
- Michael C. Keats
- Rebecca L. Martin
- Jason S. Kanterman
- Jessica M. Choi
- Christopher Bell
- Kevin Zhen
- Mexican American Legal Defense and Educational Fund
- Fried, Frank, Harris, Shriver & Jacobson LLP

**Plaintiffs-Appellees**

- Houston Justice (withdrawn)
- Houston Area Urban League
- Delta Sigma Theta Sorority Inc.
- The Arc of Texas
- Jeffrey Lamar Clemmons

**Counsel**

- Sam Spital
- Georgina Yeomans (withdrawn)
- Danielle Ahlrich
- Ciara Sisco (withdrawn)
- R. Gary Spencer
- J. Keely Dulaney
- Jennifer A. Holmes
- Liliana Zaragoza (withdrawn)
- Kathryn Sadasivan
- Kenneth E. Broughton, Jr.
- Lora Spencer (withdrawn)
- Sarah Cummings Stewart
- Shira Wakschlag
- Amir Badat
- J. Michael Showalter
- Derek Ha
- Eitan Berkowitz
- Victor Genecin
- NAACP Legal Defense and Educational Fund, Inc.
- Reed Smith LLP
- ArentFox Schiff LLP
- The Arc of the United States

**Plaintiffs-Appellees**

- OCA-Greater Houston
- League of Women Voters of Texas
- REVUP-Texas
- Texas Organizing Project
- Workers Defense Action Fund

**Counsel**

- Zachary Dolling
- Jessica Ring Amunson
- Adriel I. Cepeda Derieux
- Sarah Xiyi Chen
- Peter Thomas Hofer
- Hani Mirza
- Ashley Harris
- Ari Savitzky
- Sophia Lin Lakin
- Susan Mizner
- Brian Dimmick
- Lisa Snead

- Lucia Romano
- Jerry Vattamala
- Susana Lorenzo-Giguere
- Peter Stegemoeller
- Thomas Buser-Clancy
- Savannah Kumar
- Urja Mittal
- Sophia Cai
- Alyssa G. Bernstein
- Gregory D. Washington
- Texas Civil Rights Project
- American Civil Liberties Union Foundation
- Disability Rights Texas
- Asian American Legal Defense & Education Fund
- American Civil Liberties Union of Texas
- Jenner & Block LLP

**<u>Plaintiff</u>**

- United States of America

**<u>Counsel</u>**

- Daniel Joshua Freeman
- Jennifer Jaeseon Yun
- Michael Elliot Stewart
- Richard Alan Dellheim
- Thomas Christian Herren, Jr.
- Dana Paikowsky
- Erin Helene Flynn
- Katherine Elmlinger Lamm
- U.S. Department of Justice

**<u>Defendants</u>**

- Gregory W. Abbott
- John B. Scott
- Jose A. Esparza
- Warren K. Paxton
- State of Texas

**<u>Counsel</u>**

- Patrick K. Sweeten (withdrawn)
- Jeffrey Michael White
- Eric A. Hudson
- Kathleen Hunker
- William T. Thompson

- Jack B. Disorbo
- J. Aaron Barnes
- Office of the Texas Attorney General

**<u>Defendant</u>**

- Lupe C. Torres

**<u>Counsel</u>**

- Chad Ennis
- Robert E. Henneke
- Texas Public Policy Foundation

**<u>Defendant</u>**

- Lisa Wise

**<u>Counsel</u>**

- Angelica Lien Leo
- Caroline A. Lebel
- Robert Cotter
- David Louk
- Beatriz Mejia
- Christine Sun
- Germaine Habell
- Kathleen Hartnett
- Kelsey Spector
- Orion Armon
- Ranjana Natarajan
- Sharon Song
- Zack Goldberg
- Cooley LLP
- States United Democracy Center

**<u>Defendant</u>**

- Isabel Longoria

**<u>Counsel</u>**

- Jonathan Fombonne
- Sameer Birring
- Office of the Harris County Attorney

**Defendant**

- Jacque Callanen

**Counsel**

- Robert D. Green (withdrawn)
- Lisa Cubriel
- Bexar County District Attorney

**Defendant**

- Yvonne Ramon

**Counsel**

- Josephine L. Ramirez
- Leigh Ann Tognetti
- Hidalgo County District Attorney's Office

**Defendant**

- Michael Scarpello

**Counsel**

- Barbara S. Nicholas
- Ben L. Stool
- Dallas County District Attorney's Office

**Defendant**

- Dana DeBeauvoir

**Counsel**

- Anthony J. Nelson
- Leslie W. Dippel
- Patrick T. Pope
- Sherine Elizabeth Thomas
- Travis County Attorney's Office

**Intervenors**

- Harris County Republican Party
- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

**Counsel**

- John M. Gore
- E. Stewart Crosland
- Charles E.T. Roberts
- Stephen J. Kenny
- Jones Day

**<u>Amicus</u>**

- Foundation for Government Accountability

**<u>Counsel</u>**

- Donna Garcia Davidson
- Chase Martin
- Stewart Wilson
- Donna Garcia Davidson Law Firm
- Foundation for Government Accountability

**<u>Defendant</u>**

- Kim Ogg

**<u>Counsel</u>**

- Eric J.R. Nichols
- Karson Thompson
- Butler Snow, LLP

**<u>Defendant</u>**

- Joe Gonzales

**<u>Counsel</u>**

- Larry L. Roberson
- Lisa V. Cubriel
- Robert D. Green
- Bexar County District Attorney's Office

**<u>Defendant</u>**

- Jose Garza

**<u>Counsel</u>**

- Anthony J. Nelson
- Travis County Attorney's Office

**<u>Defendant</u>**

- John Creuzot

**<u>Counsel</u>**

- Barbara S. Nicholas
- Ben L. Stool
- Dallas County District Attorney's Office

**<u>Defendant</u>**

- Ricardo Rodriguez, Jr.

**<u>Counsel</u>**

- Michael J. Garza

x

> ▪ Hidalgo County District Attorney's Office

**<u>Defendant</u>**

▪ Yvonne Rosales

**<u>Counsel</u>**

▪ Rogelio C. Rodriguez
▪ Rodriguez Law Firm

**<u>Defendant</u>**

▪ Rebecca Guerrero

**<u>Counsel</u>**

▪ Anthony J. Nelson
▪ Travis County Attorney's Office

Dated: December 16, 2022

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
*Counsel of Record for Plaintiffs-Appellees*[*]

---

[*] Plaintiffs-Appellees LULAC Texas, Voto Latino, Texas Alliance for Retired Americans and Texas AFT ("LULAC Plaintiffs") filed this brief on behalf of all Plaintiffs-Appellees.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees do not believe oral argument is necessary to resolve this appeal, but do not object to oral argument if the court believes it would be helpful.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

COUNTERSTATEMENT OF JURISDICTION ....................................................4

ISSUES PRESENTED....................................................................................4

STATEMENT OF THE CASE .........................................................................5

    I.    Plaintiffs challenge S.B. 1., a recently enacted law that includes numerous criminal provisions that harm Plaintiffs and their members ........................................................................................5

    II.    The district court largely denies Ogg's motion to dismiss, and Ogg appeals ...............................................................................10

SUMMARY OF THE ARGUMENT ................................................................13

STANDARD OF REVIEW ...........................................................................16

ARGUMENT .............................................................................................17

    I.    This Court should dismiss the appeal for lack of jurisdiction ...........17

        A.    This Court lacks jurisdiction over Ogg's sovereign immunity defense because it is limited to Plaintiffs' constitutional claims and cannot immunize her from suit.......18

        B.    This Court lacks jurisdiction over Ogg's standing arguments ................................................................................24

            1.    Ogg's standing arguments do not fall within the collateral order doctrine.................................................24

            2.    This Court's appellate jurisdiction does not extend to Ogg's standing arguments even if it reviews her immunity claim.............................................................25

    II.    Ogg is not entitled to sovereign immunity for any claim against her ...........................................................................................30

        A.    *Ex parte Young* applies because Ogg has the specific duty to enforce the Criminal Provisions .........................................30

        B.    Ogg has demonstrated a sufficient level of enforcement........34

    III.    The district court properly concluded that Plaintiffs have plausibly alleged standing for their claims against Ogg ...................40

A.      Plaintiffs have plausibly alleged injuries to their members.....41

B.      Plaintiffs have plausibly alleged organizational injuries based on their own chilled speech and their diversion of resources.................................................................................46

C.      Plaintiffs' injuries are traceable to Ogg .................................49

CONCLUSION ..........................................................................................50

CERTIFICATE OF COMPLIANCE ......................................................53

CERTIFICATE OF SERVICE ...............................................................54

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adirondack Ry. Corp.*,
  726 F.2d 60 (2d Cir. 1984) ...............................................................22

*Anderson v. City of Bos.*,
  244 F.3d 236 (1st Cir. 2001) ............................................................25

*Antrican v. Odom*,
  290 F.3d 178 (4th Cir. 2002) ...........................................................28

*Arnold v. Cockrell*,
  306 F.3d 277 (5th Cir. 2002) ...........................................................33

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) .............................................45, 46, 47

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
  178 F.3d 350 (5th Cir. 1999) ...........................................................48

*Barilla v. City of Hous.*,
  13 F.4th 427 (5th Cir. 2021) ......................................................35, 41

*Block v. Texas Bd. of L. Exam'rs*,
  952 F.3d 613 (5th Cir. 2020) ...........................................................19

*Burns-Vidlak ex rel. Burns v. Chandler*,
  165 F.3d 1257 (9th Cir. 1999) .........................................................21

*Catlin v. United States*,
  324 U.S. 229 (1945).................................................................14, 24

*Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt.
  Bd. for Puerto Rico*,
  35 F.4th 1 (1st Cir. 2022).................................................................22

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) ...................................................*passim*

*Cooper v. Brown*,
    844 F.3d 517 (5th Cir. 2016) .............................................................28

*Cutler v. Stephen F. Austin State Univ.*,
    767 F.3d 462 (5th Cir. 2014) .............................................................26

*In re Deepwater Horizon*,
    793 F.3d 479 (5th Cir. 2015) .............................................................18

*Den Norske Stats Oljeselskap As v. HeereMac Vof*,
    241 F.3d 420 (5th Cir. 2001) .............................................................17

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994).............................................................................23

*Escobar v. Montee*,
    895 F.3d 387 (5th Cir. 2018) .......................................................15, 27

*Espinal-Dominguez v. Commonwealth of Puerto Rico*,
    352 F.3d 490 (1st Cir. 2003)...............................................................21

*Fox v. Saginaw Cnty., Michigan by Bd. of Comm'rs*,
    No. 21-1108, 2022 WL 523023 (6th Cir. Feb. 22, 2022).................28

*Freyre v. Chronister*,
    910 F.3d 1371 (11th Cir. 2018) .........................................................25

*Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of
    Registration & Elections*,
    36 F.4th 1100 (11th Cir. 2022) ..........................................................49

*Matter of Green Cnty. Hosp.*,
    835 F.2d 589 (5th Cir. 1988) .......................................................15, 25

*Hall v. Hall*,
    138 S. Ct. 1118 (2018)........................................................................17

*Hosp. House, Inc. v. Gilbert*,
    298 F.3d 424 (5th Cir. 2002) .......................................................28, 29

*Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*,
    481 F.3d 265 (5th Cir. 2007) .............................................................22

*Jamie S. v. Milwaukee Pub. Sch.*,
   668 F.3d 481 (7th Cir. 2012) ...............................................................26

*Keyes v. Gunn*,
   890 F.3d 232 (5th Cir. 2018) ...............................................................24

*La Unión del Pueblo Entero v. Abbott*,
   5:21-cv-00844-XR (W.D. Tex. Dec. 14, 2022)....................................10

*La Unión del Pueblo Entero v. Scott*,
   No. 22-50775 (5th Cir. Dec. 9, 2022)..................................................36

*Longoria v. Paxton*,
   No. 22-50110, 2022 WL 2208519 (5th Cir. June 21, 2022) .............33

*Loupe v. O'Bannon*,
   824 F.3d 534 (5th Cir. 2016) ...............................................................17

*Martin v. Halliburton*,
   618 F.3d 476 (5th Cir. 2010) .........................................................22, 26

*McClanahan v. Wilson*,
   852 F. App'x 145 (5th Cir. 2021) (per curiam) ..................................24

*Mealy v. City/Par. of E. Baton Rouge*,
   716 F. App'x 377 (5th Cir. 2018) .......................................................18

*Mercer v. Magnant*,
   40 F.3d 893 (7th Cir. 1994) ...........................................................21, 22

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ...............................................................18

*Mi Familia Vota v. Ogg*,
   No. 22-50732 (5th Cir. Sep. 19, 2022) ...............................................13

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009).....................................................................*passim*

*OCA-Greater Houston v. Texas*,
   1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) .......12

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ...................................................46, 48, 50

*Pace v. Bogalusa City Sch. Bd.*,
  403 F.3d 272 (5th Cir. 2005) (en banc) ...........................................19

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
  37 F.4th 1013 (5th Cir. 2022) ...................................................26, 27

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
  24 F.4th 442 (5th Cir. 2022) (en banc) .........................................14, 20

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  113 S. Ct. 684 (1993)...........................................................14, 20, 21

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*,
  547 U.S. 47 (2006).........................................................................41

*Shanks v. City of Dallas*,
  752 F.2d 1092 (5th Cir. 1985) ...................................................24, 25

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) .....................................................35, 43

*State v. Stephens*,
  No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15,
  2021) ....................................................................................*passim*

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).........................................................................49

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) ..................................................25, 28

*Swint v. Chambers Cty. Comm'n*,
  514 U.S. 35 (1995).....................................................................26, 30

*Tex. All. for Retired Ams v. Scott*,
  28 F.4th 669 (5th Cir. 2022) .....................................................17, 39

*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) .....................................................34, 35

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ........................................................31, 39

*Tex. Democratic Party v. Hughs,*
    860 Fed. Appx. 874 (5th Cir. 2021).............................................31

*Tex. Ent. Ass'n, Inc. v. Hegar,*
    10 F.4th 495 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 2852 (2022) ...............46

*Tex. State LULAC v. Elfant,*
    52 F.4th 248 (5th Cir. 2022) .......................................................40

*Thomas v. Nakatani,*
    309 F.3d 1203 (9th Cir. 2002) ....................................................23

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021)..................................................................49

*Valentine v. Collier,*
    993 F.3d 270 (5th Cir. 2021) .......................................................19

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988)....................................................................43

*Vote.org v. Callanen,*
    39 F.4th 297 (5th Cir. 2022) .......................................................40

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013) .......................................................42

*Whole Woman's Health v. Jackson,*
    13 F.4th 434 & 448 (5th Cir. 2021).........................................28, 29

*Whole Women's Health v. Jackson,*
    142 S. Ct. 522 (2021)..........................................................*passim*

*Wooten v. Roach,*
    964 F.3d 395 (5th Cir. 2020) .......................................................17

*Ex parte Young,*
    209 U.S. 123 (1908)..............................................................11, 30, 31

**Statutes**

28 U.S.C. § 1291 ..................................................................4, 14, 17

Tex. Code Crim. P. Art. 2.01 ....................................................34

Tex. Elec. Code § 31.006............................................................37

Tex. Elec. Code § 33.051(a-1), (g)-(h) .......................................6

Tex. Elec. Code § 33.051(a)-(b), (d)-(e) .....................................6

Tex. Elec. Code § 33.051(g) ......................................................11

Tex. Elec. Code § 33.061(a) ..................................................6, 12

Tex. Elec. Code § 64.034 ......................................................6, 12

Tex. Elec. Code § 86.010 ......................................................6, 12

Tex. Elec. Code § 86.0105 ....................................................6, 12

Tex. Elec. Code § 273.001 ................................................5, 36, 37

Tex. Elec. Code § 273.002 ......................................................5, 36

Tex. Elec. Code § 273.021(a) ....................................................1, 7

Tex. Elec. Code § 273.022 ......................................................5, 36

Tex. Elec. Code § 276.015 ...............................................6, 12, 42

Tex. Elec. Code § 276.016...........................................................12

Tex. Elec. Code § 276.017...........................................................12

Tex. Occ. Code § 301.416 ...........................................................33

Tex. Occ. Code § 301.501 ...........................................................33

**Other Authorities**

Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3914.10.9 (3d ed.) ..............23, 27

Tᴇx. Cᴏɴsᴛ. art. 5, § 21 .........................................................34

**INTRODUCTION**

This interlocutory appeal arises out of ongoing trial court proceedings in which several groups of civil and voting rights organizations, as well as the United States, filed consolidated complaints alleging that Texas Senate Bill 1 ("S.B. 1") violates the U.S. Constitution and various federal statutes, including the Voting Rights Act, Americans with Disabilities Act, and Rehabilitation Act. Enacted in September 2021, S.B. 1 introduces a host of provisions that make it more difficult to vote in Texas, including a subset of provisions that impose new or modified criminal penalties on election officials, individuals who assist others with voting, and individuals who engage in protected speech. ("Criminal Provisions").

Plaintiffs initially sued the Attorney General to seek prospective relief from the Criminal Provisions because Texas permitted him to "prosecute a criminal offense prescribed by the election laws of this state," Tex. Elec. Code. § 273.021(a). But shortly after Plaintiffs filed suit, Texas's highest criminal court held that § 273.021(a) violated the Texas Constitution's separation of powers and concluded it is "the specific duty of county and district attorneys" to prosecute "election law violations." *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *6 (Tex. Crim. App. Dec. 15, 2021), *reh'g denied,* 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022).

In view of this authoritative interpretation of Texas law, three groups of

Plaintiffs amended their complaints to name district attorneys—including Harris County District Attorney Kim Ogg—as defendants in their challenges to S.B. 1. Alone among these district attorneys, Ogg moved to dismiss the claims against her based on sovereign immunity and failure to adequately plead standing. The district court largely denied her motion and permitted Plaintiffs' claims against her to proceed to the extent they challenged the Criminal Provisions of S.B. 1. Both the district court and a motions panel of this Court subsequently denied Ogg's request to stay further proceedings against her pending the outcome of this appeal.

This Court should now dismiss the appeal. The challenged ruling below is not a final judgment, and Ogg's defenses cannot confer jurisdiction for an interlocutory appeal under the collateral order doctrine because Ogg asserts immunity only as a defense to the constitutional claims against her. She acknowledges (as the motions panel observed) that Congress abrogated her immunity from Plaintiffs' statutory claims, so even if her immunity arguments are successful as to the constitutional claims she addresses here, that defense would not spare her from litigating Plaintiffs' remaining causes of action, vitiating any basis for piecemeal collateral order review.

In the event this Court reaches any portion of the merits of this appeal, it should affirm. The district court correctly rejected Ogg's sovereign immunity defense to Plaintiffs' constitutional claims in view of her admission that she "indisputably has the statutory authority" to prosecute the Criminal Provisions,

2

ROA.10799, and the Texas Court of Criminal Appeals' holding that it is her "specific duty" to enforce the same. *Stephens*, 2021 WL 5917198, at *6. The Supreme Court made clear just last year that such authority is enough *on its own* to invoke the *Ex parte Young* exception to sovereign immunity. *See Whole Women's Health v. Jackson*, 142 S. Ct. 522 (2021).

Finally, though this Court should not reach the issue, the district court was also correct in finding that Plaintiffs adequately plead standing to challenge Ogg's enforcement of the Criminal Provisions. Contrary to Ogg's baseless assertion, many of the Criminal Provisions directly regulate Plaintiffs' members who either provide or receive various kinds of voting assistance. The Criminal Provisions also chill the speech of Plaintiffs' members by creating criminal liability for constitutionally protected election activity that Plaintiffs' members routinely engage in. Because of these injuries, the Plaintiff organizations with members have associational standing to vindicate their members' rights. The Criminal Provisions also chill the Plaintiffs' speech as organizations, directly harming them. Further, by making it more difficult for their members and constituents to vote, S.B. 1 forces Plaintiffs to divert resources from other programs to protect their members and pursue their missions. This Court should therefore reject Ogg's effort to dismiss Plaintiffs' claims before they have the opportunity to present evidence at summary judgment and trial.

## COUNTERSTATEMENT OF JURISDICTION

This Court lacks jurisdiction because the district court's order is not a "final decision[] of [a] district court[] of the United States," 28 U.S.C. § 1291, and is not reviewable under the collateral order doctrine or this Court's pendent appellate jurisdiction.

## ISSUES PRESENTED

1.    Whether this Court has collateral order jurisdiction over Ogg's appeal from a non-final order granting-in-part and denying-in-part her motion to dismiss, where her claim of sovereign immunity does not extend to all the claims against her, and her remaining defenses are not appealable under the collateral order doctrine.

2.    Whether the district court properly denied Ogg's motion to dismiss on sovereign immunity grounds where Ogg concedes that Congress has abrogated her immunity from Plaintiffs' statutory claims and where the Texas Court of Criminal Appeals has held that enforcing Texas's election laws—including the Criminal Provisions of S.B. 1—is "the specific duty of county and district attorneys" like Ogg. *Stephens*, 2021 WL 5917198, at *6.

3.    Whether the district court properly denied Ogg's motion to dismiss on standing grounds where Plaintiffs have alleged injuries to their members and organizational harms that are traceable to Ogg's enforcement of the Criminal Provisions of S.B. 1.

4

## STATEMENT OF THE CASE

I. **Plaintiffs challenge S.B. 1., a recently enacted law that includes numerous criminal provisions that harm Plaintiffs and their members.**

Texas has long used its criminal justice system to enforce its election laws. Since 2015, state officials have resolved nearly 300 prosecutions of the Texas Election Code. ROA.6158 ¶ 83. And in 2020 alone, the Attorney General's office spent more than 22,000 staff hours investigating alleged election law violations. ROA.6573 ¶ 199. Texas has also devoted substantial resources to bringing charges for Election Code infractions: in 2021, the Texas Attorney General created an "Election Integrity Unit" to "continue to pursue prosecutions for criminals willing to commit election crimes." *Id*. District Attorneys like Ogg are at the heart of Texas's enforcement of its criminal election laws, as state law empowers them—and in some instances requires them—to investigate election code violations, including at the behest of the Attorney General. *See, e.g.*, Tex. Elec. Code §§ 273.001, 273.002, 273.022.

The Election Integrity Protection Act of 2021, known as S.B. 1, adds to this enforcement scheme by imposing additional restrictions on the voting process backed by criminal penalties. ROA.6568 ¶ 175. S.B. 1, for example, prohibits efforts to persuade voters to support a candidate or measure in the presence of a ballot. In so doing, it broadly criminalizes a wide range of interactions and conversations that may occur between voters and organizers, including legitimate efforts to ensure that

voters with disabilities receive the assistance they are entitled to under federal law. S.B. 1 § 7.04 (adding Tex. Elec. Code § 276.015); *see, e.g.*, ROA.6589, 6592 ¶¶ 279, 292 (LULAC Plaintiffs); ROA.6322-32, ¶¶ 195–239 (OCA Plaintiffs). It also criminalizes certain types of voting assistance, including by forbidding "compensation" in the context of mail-in voting assistance. S.B. 1 §§ 6.04, 6.05; 6.06 (amending Tex. Elec. Code §§ 64.034, 86.010, and 86.0105); *see* ROA.6308-12 ¶¶ 149–165 (OCA Plaintiffs). Finally, S.B. 1 imposes new restrictions on election officials, limiting their ability to regulate the conduct and placement of partisan poll watchers on pain of criminal sanctions. S.B. 1 §§ 4.06, 4.09 (amending Tex. Elec. Code §§ 33.051(a)-(b), (d)-(e), and 33.061(a) and adding Tex. Elec. Code § 33.051(a-1), (g)-(h)); ROA.6570 ¶¶ 185-186. These restrictions will embolden partisan poll watchers who, as recent elections have shown, are likely to disrupt election proceedings to the detriment of voters. ROA.6571 ¶ 189-191.

In September 2021, five groups of private Plaintiffs—primarily a collection of voting rights and civil rights organizations—filed lawsuits alleging S.B. 1 violates the U.S. Constitution, the Voting Rights Act ("VRA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Plaintiffs alleged that S.B. 1's restrictions would have a profound impact on their ability to advance their respective missions, as well as their members' ability to vote and assist others with voting. They alleged, for example, that "[t]he extensive reach of these restrictions and the

accompanying threat of criminal and civil penalties will deter Plaintiffs' members and volunteers from participating in Plaintiffs' voter education and GOTV efforts, thereby limiting the means by which Plaintiffs and their constituents communicate with voters and engage in the political process." ROA.6589 ¶ 283 (LULAC Plaintiffs); *see also* ROA.6261-6272 ¶¶ 9-34 (OCA Plaintiffs). These actions were consolidated on September 30, 2021, before Judge Xavier Rodriguez of the Western District of Texas. ROA.522.[1]

Plaintiffs' complaints originally named various state and county officials as Defendants, including Texas Attorney General Ken Paxton. ROA.11429 (*LULAC Texas v. Scott*, No. 1:21-cv-786); ROA.111 (*La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-844-XR); ROA.11174 (*OCA-Greater Houston v. Scott*, No. 1:21-cv-780-XR); ROA.11992 (*Mi Familia Vota v. Abbott*, No. 5:21-cv-920-XR); ROA.11720 (*Houston Justice v. Abbott*, No. 5:20-cv-848-XR). Plaintiffs sued the Attorney General in part because Texas Election Code § 273.021 authorized him to enforce election-related criminal statutes, including those established by S.B.1. *See* Tex. Elec. Code § 273.021(a) ("The attorney general may prosecute a criminal offense prescribed by the election laws of this state.").

Three months after Plaintiffs brought this litigation, the Texas Court of

---

[1] The United States filed its own lawsuit challenging S.B. 1 on November 4, which was subsequently consolidated into this action. ROA.67.

Criminal Appeals enjoined Texas Election Code § 273.021 as unconstitutional. *See Stephens*, 2021 WL 5917198, at *5. The Court held that under the Texas Constitution, only county and district attorneys—not the Texas Attorney General—can unilaterally initiate prosecutions of election-related criminal offenses. *See id* at *6. (finding such prosecutions the "specific duty of county and district attorneys"). It further explained that "the Attorney General can prosecute with the permission of the local prosecutor but cannot initiate prosecution unilaterally." *Id.* at *8.

Three of the Plaintiff groups—the LULAC Plaintiffs, MFV Plaintiffs,[2] and OCA Plaintiffs[3]—subsequently amended their complaints to add several district attorneys as defendants, including Kim Ogg, the District Attorney for Harris County. Ogg proceeded to offer the Plaintiffs a so-called "stipulation" under which she would refrain from enforcing the Criminal Provisions "until such time as a final, non-appealable decision has been issued in this matter." ROA.8719. But this limited offer did not bind Ogg to any final ruling on the merits; require her to produce discovery

---

[2] The MFV Plaintiffs include Mi Familia Vota, Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Marla Lopez, Marlon Lopez, Paul Rutledge, and Jeffrey Lamar Clemmons.

[3] The OCA Plaintiffs include OCA-Greater Houston (OCA-GH), League of Women Voters of Texas, (LWVTX), REVUP-Texas, and Workers Defense Action Fund (WDAF). Texas Organizing Project (TOP) is listed as a party to this appeal despite having moved to voluntarily withdraw as a plaintiff in this consolidated litigation on April 13, 2022, *see* ROA.99 (ECF No. 366) and the district court granting that motion and terminating TOP as a party on April 14, 2022. *Id.* (Text Order). OCA Plaintiffs have filed a letter requesting the Clerk of Court withdraw TOP as a party.

in the case; or impact her statutory duty to aid the Attorney General when called upon to help investigate election infractions. Ogg's stipulation, moreover, did not rule out her granting permission to Attorney General Paxton to bring prosecutions under S.B. 1 within her jurisdiction. The stipulation was intended only to allow Ogg to "conserv[e] prosecutorial resources until such time as challenges to the constitutionality of the [Criminal Provisions] are resolved." ROA.8719-20. As a result, Plaintiffs rejected the stipulation. In contrast, Plaintiffs did not oppose District Attorney Yvonne Rosales's motion to be excused from active participation in this litigation. Her motion specified that she agreed to "comply with all court orders and judgments applicable to her" and "respond or object to discovery requests." ROA.8810 ¶¶ 3, 6.

On April 12, the OCA Plaintiffs served Ogg with written discovery, requesting materials and information related to her office's investigation and prosecution of voting-assistance and mail-ballot fraud offenses, including those under S.B. 1. ROA.10820. To date, Ogg has not provided responses to those requests or produced any responsive materials. Only in late October did Ogg, for the first time, agree to meet and confer on Plaintiffs' requests. But even then, after Plaintiffs agreed to narrow the scope of their requests during that conferral process, Ogg has steadfastly refused to produce documents or provide written discovery responses. As a result, the OCA Plaintiffs moved to compel discovery from her on December 14.

*See La Unión del Pueblo Entero v. Abbott*, 5:21-cv-00844-XR (W.D. Tex. Dec. 14, 2022), ECF Nos. 491, 491-7.

## II.    The district court largely denies Ogg's motion to dismiss, and Ogg appeals.

On March 29, Ogg filed an omnibus motion to dismiss "all claims brought against her" by the LULAC Plaintiffs, MFV Plaintiffs, and OCA Plaintiffs. ROA.8698. While acknowledging her "indisputabl[e] . . . statutory authority" to enforce the Criminal Provisions, she claimed Plaintiffs had insufficiently alleged she was planning to enforce those provisions and thus failed to satisfy the *Ex parte Young* exception to sovereign immunity. ROA.8706. On the same grounds, she contended Plaintiffs failed to state a claim. ROA.8716-17. Finally, she argued Plaintiffs failed to plausibly allege an injury-in-fact to supply standing because they do not intend to violate the Criminal Provisions and, further, did not adequately plead a causal relationship between her enforcement authority and any such injuries. ROA.8713-16.

The district court granted in part and denied in part the motion on August 2. It allowed Plaintiffs to proceed against Ogg with challenges to the Criminal Provisions of S.B. 1 but dismissed all claims against Ogg that do not challenge criminal provisions under the Election Code. ROA.10808. The court held that sovereign immunity did not bar Plaintiffs' claims under the exception carved out in *Ex parte Young*, 209 U.S. 123 (1908), and explained that Ogg had the specific duty

to enforce the provisions of S.B. 1 that "create and implicate criminal offenses." ROA.10799. The court relied both on the Texas Court of Criminal Appeals' decision in *Stephens* and Ogg's own admission that she "indisputably has the statutory authority within the boundaries of Harris County to prosecute cases under any and all Texas statutes that set out criminal offenses, including criminal offense provisions of the Election Code." *Id.*

The district court likewise held that Plaintiffs have standing to assert claims regarding the Criminal Provisions against Ogg. ROA.10801. It found that Plaintiffs had adequately alleged that S.B. 1 will harm their members, and that the groups will need to divert their resources from their ordinary activities to educate members about the impacts of the Criminal Provisions. ROA.10802-06. The court further concluded that the injuries were traceable to, and redressable by, Ogg given her authority to enforce the Criminal Provisions. ROA.10807.

Accordingly, the district court concluded that Plaintiffs could proceed against Ogg with their challenges to the following provisions of S.B. 1, each of which creates or implicates criminal offenses:

- Section 4.06, which creates a misdemeanor offense for "election officer[s]" if they "intentionally or knowingly refuse[] to accept a [partisan poll] watcher for service when acceptance of the watcher is required by this section." S.B. 1 § 4.06 (creating Tex. Elec. Code § 33.051(g));

- Section 4.09, which makes it an offense for an election official to "obstruct the view of [a partisan poll] watcher or [to] distance the watcher from the activity or procedure to be observed in a manner that would make observation

not reasonably effective." S.B. 1 § 4.09 (amending Tex. Elec. Code § 33.061(a));

- Section 6.04, which requires persons assisting voters to swear under penalty of perjury that the voter they are assisting represented that "they are eligible to receive assistance" and that the assistor "did not pressure or coerce the voter into choosing me to provide assistance." S.B. § 6.04 (amending Tex. Elec. Code § 64.034);[4]

- Section 6.05, which imposes criminal penalties on assistors who do not provide detailed disclosures on a voter's ballot envelope. S.B. 1 § 6.05 (amending Tex. Elec. Code § 86.010);

- Section 6.06, which criminally prohibits offering or providing compensation to, or accepting compensation from, "another person for assisting" mail voters. S.B. 1 § 6.06 (amending Tex. Elec. Code § 86.0105); and

- Section 7.04, which criminalizes (1) efforts by election officials to encourage voters to request applications for absentee ballots, S.B. 1 § 7.04 (creating Tex. Elec. Code §§ 276.016 and 276.017); and (2) knowingly compensating or being compensated for "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id*. (creating Tex. Elec. Code § 276.015).[5]

---

[4] The District Court held that a modified injunction in a different case, *OCA-Greater Houston v. Texas*, 1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022), mooted Plaintiffs' challenge to other portions of section 6.04. *See* ROA.10660; *see also* Pls.'-Appellees' Joint Resp. to Def.-Appellant Ogg's Mot. for Stay Pending Appeal at 5 & n.2.

[5] As a result of the court's order, the LULAC Plaintiffs are proceeding with VRA Section 2 and constitutional claims against §§ 4.06, 4.09, 6.04, and 7.04, as well as a VRA Section 208 claim against § 7.04. ROA.6593-94. The OCA Plaintiffs are proceeding with VRA Section 208, ADA, and Rehabilitation Act claims against §§ 6.04 and 6.06 and a constitutional claim against § 7.04. ROA.6318-32. The MFV Plaintiffs are proceeding with constitutional, VRA Section 2, VRA Section 208, ADA, and Rehabilitation Act claims against §§ 6.04 and 6.05; constitutional claims

Ogg filed a notice of appeal on August 10 and moved to stay all further discovery and proceedings against her on August 15. ROA.10811. Although the district court denied the motion to stay the same day it was filed, ROA.109, Ogg waited more than a month to seek a stay in this Court. *See* Appellant's Mot. to Stay, *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Sep. 19, 2022).

The motions panel denied Ogg's request on October 7. The panel found that Ogg failed to justify a stay as she had "no likelihood of success" on her sovereign immunity defense to Plaintiffs' VRA claims "because the [Voting Rights Act] explicitly abrogated sovereign immunity." Order at *4, *Mi Familia Vota v. Ogg*, No. 22-50732 (5th Cir. Oct. 7, 2022) ("Mot. Panel Order"). And it "decline[d] Ogg's invitation to prematurely review [her] pleading and standing arguments at the motions stage of an interlocutory appeal concerning a wholly separate sovereign immunity issue." *Id.* at 5.

## SUMMARY OF THE ARGUMENT

1.    There is no dispute that Ogg does not appeal from a final judgment below, and accordingly her appeal must satisfy the collateral order doctrine for this Court to have jurisdiction. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *see also* 28 U.S.C. § 1291. But her arguments do not fall within that narrow

---

against §§ 4.06 and 4.09; and constitutional and VRA Section 2 claims against § 7.04. ROA.6216-53.

doctrine. While a defendant may ordinarily seek immediate appeal when a "a proper application of sovereign immunity would remove [a party] from the litigation and require dismissal of *all claims*," *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (en banc) (emphasis added), Ogg asserts sovereign immunity only as a defense to liability under Plaintiffs' *constitutional* claims. She does not claim full immunity from suit or a right not to be a litigant. Indeed, she acknowledges that Congress has likely abrogated her sovereign immunity for each of Plaintiffs' statutory claims, *see* Br. at 25-26, and the motions panel found there is not even a "serious legal question" that Ogg lacks immunity from Plaintiffs' VRA claims. *See* Motions Panel Order at 5 n.3 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). Even if she was protected by sovereign immunity, that would not shield her from further litigation on Plaintiffs' statutory claims. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 113 S. Ct. 684, 688 (1993). The piecemeal nature of Ogg's immunity defense undercuts any basis for collateral order review.

Ogg's standing arguments do not fill the missing jurisdictional gaps in her immunity defense. It is well-established that "denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable." *Catlin v. United States*, 324 U.S. 229, 236 (1945). Ogg's standing arguments are not only related to the merits of ongoing litigation, but also are

14

reviewable on appeal from a final judgment, and thus fail to satisfy the collateral order doctrine. *Matter of Green Cnty. Hosp.*, 835 F.2d 589, 596 (5th Cir. 1988). Nor may the Court consider these arguments under its pendent appellate jurisdiction in the event it finds it may consider her immunity defense—Ogg never claims that her standing arguments are "inextricably intertwined" with, or "necessary to ensure meaningful review of," her immunity claim. *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018).

    2.    Ogg is not entitled to sovereign immunity for any claim against her. She cannot invoke sovereign immunity from Plaintiffs' claims under the Voting Rights Act, Americans with Disabilities Act, and Rehabilitation Act because it is settled law that Congress abrogated sovereign immunity from claims brought under those statutes. Nor can she invoke sovereign immunity from Plaintiffs' constitutional claims under the exception to sovereign immunity carved out in *Ex parte Young*.

    The Supreme Court recently clarified that the sole requirement for *Ex parte Young* to apply is that the defendant official have the specific duty to enforce the challenged statute. *See Whole Women's Health v. Jackson*, 142 S. Ct. 522 (2021). Eight members of the Court held that plaintiffs could bring a *pre-enforcement* challenge to a Texas abortion statute against state licensing officials because those officials "may or must take enforcement actions" under the statutory scheme—even though none of the officials had threatened enforcement. *Id.* at 535-36. *Ex parte*

15

*Young* likewise applies here because there is no dispute that Ogg has the exclusive authority to prosecute alleged violations of the Criminal Provisions.

In any event, Plaintiffs have satisfied each of this Court's pre-*Whole Women's Health* "guideposts" for applying *Ex parte Young*: Plaintiffs have sued the official with the specific duty to enforce the Criminal Provisions; they have alleged that Ogg will enforce the Criminal Provisions against Plaintiffs if they engage in protected conduct; and they have alleged that this threat of enforcement has constrained Plaintiffs' activities.

3.    Plaintiffs have standing to bring their claims against Ogg. While Ogg's standing arguments are not properly before this Court, they nonetheless fail on their own terms. The district court correctly held that Plaintiffs have plausibly alleged cognizable injuries because the Criminal Provisions directly harm Plaintiffs' members, including by chilling their First Amendment right to engage voters. The Criminal Provisions also chill speech by Plaintiffs themselves and have forced Plaintiffs to divert resource from their routine activities to protect their members' and constituents' right to vote. These injuries are traceable to Ogg because Texas law charges her with enforcing the Criminal Provisions.

## STANDARD OF REVIEW

This Court reviews questions of "sovereign immunity and standing *de novo*." *Tex. All. for Retired Ams v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). In considering

an appeal of a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept all factual allegations in the [Plaintiffs'] complaint[s] as true." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Wooten v. Roach*, 964 F.3d 395, 399 (5th Cir. 2020) (explaining the court must "accept as true" the allegations in operative complaint in Rule 12(b)(1) appeal); *Loupe v. O'Bannon*, 824 F.3d 534, 536 (5th Cir. 2016) ("In determining immunity, we accept the allegations of [the plaintiff's] complaint as true.").

## ARGUMENT

### I.    This Court should dismiss the appeal for lack of jurisdiction.

Federal appellate jurisdiction is limited to review of "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Ogg does not dispute that she appeals from a non-final order below, nor could she—the district court's order denying most of her motion to dismiss did not "end[] the litigation on the merits." *Hall v. Hall*, 138 S. Ct. 1118, 1123-24 (2018) (quotations omitted).

Ogg instead invokes the collateral order doctrine, which permits immediate appeal of "a 'small class' of collateral rulings that . . . do not end the litigation [but] are appropriately deemed 'final.'" *Mohawk*, 558 U.S. at 106 (quoting *Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 545-46 (1949)). "The collateral order doctrine is a 'practical construction' of the final decision rule, not an exception to it." *Mealy v. City/Par. of E. Baton Rouge*, 716 F. App'x 377, 378 (5th Cir. 2018)

(quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). It applies "only [to] decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk*, 558 U.S. at 106. The Supreme Court "has repeatedly stressed that the conditions for appeal under the collateral order doctrine are 'stringent.'" *In re Deepwater Horizon*, 793 F.3d 479, 484 (5th Cir. 2015) (quoting *Digit. Equip. Corp.*, 511 U.S. at 868). Ogg has not met these stringent conditions here.

### A.    This Court lacks jurisdiction over Ogg's sovereign immunity defense because it is limited to Plaintiffs' constitutional claims and cannot immunize her from suit.

Ogg asserts a defense of sovereign immunity only with respect to Plaintiffs' constitutional claims—she admits that Plaintiffs' statutory claims each "contain[] at least an arguable waiver of sovereign immunity." Br. at 25 (citing *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020)). In fact, the question is not even arguable. As the motions panel found, "given the clarity of the VRA's abrogation of sovereign immunity, there is no 'serious legal question'" that Ogg lacks a sovereign immunity defense to, at minimum, Plaintiffs' VRA claims.  Mot. Panel Order at 5 n.3 (quoting *Ruiz v. Estelle*, 650 F.2d at 565); *Mi Familia Vota*, 977 F.3d at 469. ("There is no sovereign immunity with respect to [Plaintiffs'] Voting Rights Act claims."). The same is true of Plaintiffs' statutory claims under the ADA and

Rehabilitation Act. *See, e.g.*, *Block v. Texas Bd. of L. Exam'rs*, 952 F.3d 613, 617 (5th Cir. 2020) (describing standard for whether Title II of the ADA abrogates sovereign immunity); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (en banc) (holding that Louisiana education agencies waived immunity from claims under Section 504 of the Rehabilitation Act by accepting federal funding).[6]

Congress's abrogation of sovereign immunity over these statutory claims effectively forecloses Ogg's interlocutory appeal. Even if she could assert the defense against Plaintiffs' constitutional claims—and she cannot, *see infra* § II—she would still be subject to further litigation on Plaintiffs' statutory claims, which she challenges now with "pleading and standing arguments" that are "wholly separate [from the] sovereign immunity issue." Mot. Panel Order at 5.

The limited reach of her immunity claim vitiates any basis for jurisdiction under the collateral order doctrine. This Court has explained that "jurisdiction over [an] interlocutory appeal" exists when "a proper application of sovereign immunity

---

[6] While abrogation of a state's sovereign immunity from a Title II ADA claim is assessed on a "claim-by-claim basis," *Block*, 952 F.3d at 617, Ogg makes no argument that Plaintiffs have not met the relevant standard here. In any event, Plaintiffs allege that S.B. 1's onerous new voter assistance rules burden their members' right to vote in a manner that violates both the ADA and the Fourteenth Amendment, as required to plead an abrogation of Eleventh Amendment immunity over the claim. *Cf. Valentine v. Collier*, 993 F.3d 270, 280-81 (5th Cir. 2021) (alleged conduct that violated the ADA and the Eighth Amendment, which applies to the states through the Fourteenth Amendment, abrogated sovereign immunity under Title II).

would remove [a party] from [] litigation and require dismissal of *all claims*." *Phillips*, 24 F.4th at 450 (emphasis added); *see also Metcalf & Eddy*, 113 S. Ct. at 688. That rule applies when a defendant makes "a proper invocation of sovereign immunity [that they] will be [immune] from the '*entire suit*.'" *Phillips*, 24 F.4th at 449 (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 411 (5th Cir. 2004)) (emphasis added). Here, there is no even a "serious question" as to whether Ogg is immune from Plaintiffs' "entire suit"—she is not and does not argue otherwise to this Court.

The Supreme Court's holding in *Metcalf & Eddy* makes clear why the collateral order doctrine cannot apply in such circumstances. The Court there permitted interlocutory appeal because the "central benefits" of sovereign immunity—"avoiding the costs and general consequences of subjecting public officials to the risks of discovery and trial—would be forfeited" if the defendant was forced to stand trial on claims from which it was fully immune. 113 S. Ct. at 687. That satisfied the collateral order doctrine's requirement that a challenged order be "effectively unreviewable on appeal from [a] final judgment," *Mohawk*, 558 U.S. at 106, because the Eleventh Amendment's guarantee that "*[a]bsent waiver*, neither a state nor agencies acting under its control may 'be subject to suit in federal court'" would be lost to the defendant without immediate appeal. *Metcalf & Eddy*, 113 S. Ct. at 687-88 (quoting *Welch v. Tex. Dept. of Highways and Pub. Transp.*, 483 U.S.

468, 480 (1987) (emphasis added)). Accordingly, the "foundation for the interlocutory appeal authorized by [*Eddy & Metcalf*] is the existence of a right not to be a litigant." *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994). But "[o]nce the defendants concede that the litigation is proper" under the Eleventh Amendment, "they undermine any claim of entitlement to an interlocutory appeal." *Id.* at 896-97.

Federal courts have thus repeatedly held that no collateral order jurisdiction exists where the appellant's assertion of sovereign immunity would not render them fully immune from suit. The Ninth Circuit, for example, found that it lacked collateral order jurisdiction over an appeal involving Title II of the ADA and Section 504 of the Rehabilitation Act—two of Plaintiffs' statutory claims here—where the defendants asserted sovereign immunity solely in response to the plaintiff's demand for punitive damages. *See Burns-Vidlak ex rel. Burns v. Chandler*, 165 F.3d 1257, 1259 (9th Cir. 1999). It explained that unlike in *Metcalf & Eddy*, "the State [wa]s not claiming sovereign immunity from suit" and acknowledged it was "subject to suit . . . in federal court on the appellees' Title II and Section 504 claims." *Id.* at 1260. The First Circuit likewise found it lacked jurisdiction over an appeal concerning sovereign immunity filed by Puerto Rico where the Commonwealth conceded Congress had enacted a "valid abrogation of state sovereign immunity" under Title VII. *See Espinal-Dominguez v. Commonwealth of Puerto Rico*, 352 F.3d 490, 494 (1st Cir. 2003). This concession "opened the Eleventh Amendment portal

at least part-way," divesting the court of jurisdiction over the interlocutory appeal. *Id.*; *see also In re Adirondack Ry. Corp.*, 726 F.2d 60, 62 (2d Cir. 1984) (finding "no basis for viewing the striking of the defense of sovereign immunity as a final order" when the defense did not relieve the state "from the burden of litigating" declaratory judgment claim).

This Court lacks collateral order jurisdiction here for the same reasons. Sovereign immunity does not shield Ogg from Plaintiffs' statutory claims. Ogg concedes that Congress validly abrogated sovereign immunity over numerous statutory claims against her, Br. at 25-26, and makes no affirmative assertion of immunity as to those claims.[7] Her appeal therefore does not implicate the "right not to be a litigant," *Mercer*, 40 F.3d at 896, because her Eleventh Amendment defense does not "provide[] *full immunity from suit*." *Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 35 F.4th 1, 11 (1st Cir. 2022). Because "the action . . . would proceed against [Ogg] whether or not [she] prevail[s]

---

[7] Even if Ogg did assert sovereign immunity against all of Plaintiffs' claims, that would fail to establish collateral order jurisdiction because her "claim of immunity must be 'substantial' to justify an appellate court's collateral order review." *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Texas, Inc.*, 481 F.3d 265, 268-69 (5th Cir. 2007). "To be 'substantial,' such a claim must be more than 'merely 'colorable.''" *Martin v. Halliburton*, 618 F.3d 476, 483 (5th Cir. 2010). But here, any sovereign immunity claim Ogg could make as to Plaintiffs' statutory claims—and in particular their VRA claims—fails to even present a "serious question," never mind a colorable one. *See* Mot. Panel Order at 5 n.3.

on appeal" of her sovereign immunity claim, *Thomas v. Nakatani*, 309 F.3d 1203, 1207 (9th Cir. 2002), there is no basis for collateral order jurisdiction here.

To be sure, Ogg contends that Plaintiffs' statutory claims against her should be dismissed on non-immunity grounds. *See* Br. at 25-31. But regardless of the merits of those arguments, they do not supply a reason to hear Ogg's appeal now. As explained *infra*, none of those arguments independently satisfy the collateral order doctrine or fall within this Court's limited pendent appellate jurisdiction. Her "conce[ssion] that [she] must continue to bear the burdens of litigation on claims or remedies *outside the immunity*" removes her appeal from narrow scope of the collateral order doctrine. Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3914.10.9 (3d ed.) (collecting cases) (emphasis added). Permitting Ogg's run-of-the-mill pleading and standing arguments to fill the missing gap in her immunity defense would "swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digit. Equip. Corp.*, 511 U.S. at 868. This Court therefore must reject Ogg's request that it now consider her immunity from only some of Plaintiffs' claims and, instead, defer consideration of such arguments until after final judgment.

**B.    This Court lacks jurisdiction over Ogg's standing arguments.**

   **1.    Ogg's standing arguments do not fall within the collateral order doctrine.**

The district court's order denying Ogg's motion to dismiss Plaintiffs' claims for lack of standing does not fall within the scope of the collateral order doctrine either. *See* Br. at 25-31. The Supreme Court long ago held that "denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable." *Catlin*, 324 U.S. at 236; *see also Keyes v. Gunn*, 890 F.3d 232, 235 n.4 (5th Cir. 2018) ("[A] district court's rejection of a defense of lack of subject matter jurisdiction is not immediately appealable"); *McClanahan v. Wilson*, 852 F. App'x 145 (5th Cir. 2021) (per curiam) (dismissing appeal seeking "interlocutory review of the denial of [a] motion to dismiss for lack of subject-matter jurisdiction").

  Ogg's appeal fails at least two of the collateral order doctrine's requirements. *See Mohawk*, 558 U.S. at 106. For one, this Court has "reject[ed] out of hand" the argument that standing presents an issue separate from the merits. *Shanks v. City of Dallas*, 752 F.2d 1092, 1098 n.9 (5th Cir. 1985). As it explained in *Shanks*, "case or controversy considerations 'obviously shade into those determining whether the complaint states a sound basis for equitable relief.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Thus, "[a]ny examination of [] standing" would "quite clearly involve considerations that are enmeshed in the legal issues

surrounding [Plaintiffs'] cause[s] of action." *Id.*; *see also Anderson v. City of Bos.*, 244 F.3d 236, 240-41 (1st Cir. 2001) (similar).

Likewise, many "courts have recognized that the issue of standing is not effectively unreviewable on appeal from a final judgment," and thus "fails" an additional element of the collateral order doctrine. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) (collecting cases and holding based on "unambiguous precedent" that standing is not reviewable under collateral order doctrine); *see also Matter of Green Cnty. Hosp.*, 835 F.2d 589, 596 (5th Cir. 1988) ("The question of subject matter jurisdiction is far from unreviewable on appeal from a final judgment."). Because standing is readily reviewable after final judgment "it isn't difficult to see why" the "question of standing does not fit within the collateral order doctrine." *Freyre v. Chronister*, 910 F.3d 1371, 1378 (11th Cir. 2018) (quoting *Summit Med. Assocs.*, 180 F.3d at 1334). This case is no exception—there is no dispute that Ogg may appeal the district court's rejection of her standing arguments after final judgment.

### 2. This Court's appellate jurisdiction does not extend to Ogg's standing arguments even if it reviews her immunity claim.

Ogg may not bootstrap her standing arguments to her sovereign immunity defense. Even assuming this Court has collateral order jurisdiction over Ogg's assertion of sovereign immunity—and it does not, *see supra* § I.A—the Court "must take great care to avoid 'indiscriminate appellate review of interlocutory

orders.'" *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (quoting *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1714 (2017)). And it "should be especially wary of . . . allowing parties to 'parlay . . . collateral orders into multi-issue interlocutory appeal tickets.'" *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468–69 (5th Cir. 2014) (quoting *Swint,* 514 U.S. at 49–50, 115 S. Ct. 1203)); *see also Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 492 (7th Cir. 2012) (appellants may not use collateral order doctrine in tandem with pendent appellate jurisdiction as a "bootstrapping procedural maneuver"). That hesitancy should be all the greater here, where Ogg has failed to meaningfully press any basis for pendent jurisdiction over her standing arguments. *See Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010) (noting appellants "bear the burden of establishing . . . appellate jurisdiction").

The Supreme Court has instructed appellate courts not to extend their collateral order jurisdiction "to rulings that would not otherwise qualify for expedited consideration" unless those rulings are "essential to the resolution of properly appealed collateral orders." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995) (citing Kanji, *The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context*, 100 Yale L.J. 511, 530 (1990)).[8] Accordingly, "pendent

---

[8] As this Court recently noted, *"the Supreme Court has exercised pendent appellate jurisdiction only once." Pickett*, 37 F.4th at 1019 & n.4 (citing *Clinton v. Jones*, 520

appellate jurisdiction is carefully circumscribed" and may be applied "(1) If the pendent decision is 'inextricably intertwined' with the decision over which the appellate court otherwise has jurisdiction" or (2) if "review of the former decision [is] necessary to ensure meaningful review of the latter." *Escobar*, 895 F.3d at 391 (quoting *Swint*, 514 U.S. at 51); *cf.* Wright & Miller, 15A Fed. Prac. & Proc. Juris. § 3914.10.9 (3d ed.) ("Pendent appeal jurisdiction is exercised sparingly on Eleventh Amendment appeals, a practice that is often sensible because the peculiarities of Eleventh Amendment doctrine are readily separated from other issues."). "Pendent appellate jurisdiction 'is only proper in [the] rare and unique circumstances' articulated by *Swint*." *Escobar*, 895 F.3d at 392 (quoting *Byrum v. Landreth*, 566 F.3d 442, 449 (5th Cir. 2009)).

Ogg makes no suggestion that her standing arguments are "inextricably intertwined" with her sovereign immunity defense or that the "review of the former [is] necessary to ensure meaningful review of the latter." *Id.* at 391. Nor could she—as the motions panel put it, her "standing arguments at the motions stage of an interlocutory appeal" do not concern her "wholly separate sovereign immunity issue." Mot. Panel Order at 5. And extensive case law makes clear that this Court "may resolve the Eleventh Amendment immunity issue here without reaching the

U.S. 681, 707 n.41 (1997)). Indeed, "[p]endent appellate jurisdiction is not specifically provided for by Sections 1291 and 1292." *Id.*

merits of standing" because the "issues are neither 'inextricably intertwined' nor 'necessary to ensure meaningful review' of one another." *Summit Med. Assocs.*, 180 F.3d at 1335; *see also Fox v. Saginaw Cnty., Michigan by Bd. of Comm'rs*, No. 21-1108, 2022 WL 523023, at *4 (6th Cir. Feb. 22, 2022) (declining "to review th[e] portion of the district court's order" concerning "standing" because it does not fall within collateral order doctrine in appeal concerning sovereign immunity); *Antrican v. Odom*, 290 F.3d 178, 191 (4th Cir. 2002) (similar); *cf. Cooper v. Brown*, 844 F.3d 517, 526 n.12 (5th Cir. 2016) (noting this Court has "generally . . . resisted efforts to bootstrap non-final claims into [qualified immunity] appeals" (collecting cases)).

Aside from her jurisdictional statement, Ogg's only argument in support of jurisdiction is found in a brief footnote pointing to two cases for the proposition that this Court may consider subject-matter jurisdiction in tandem with sovereign immunity. *See* Br. at 26 n.8. But neither decision helps her—in both cases, pendent jurisdiction applied because this Court was required to determine "whether there [was] federal subject matter jurisdiction over the *underlying case*," *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 429 (5th Cir. 2002) (emphasis added), and thus whether the trial court had jurisdiction to "entertain [the] lawsuit to begin with," *Whole Woman's Health v. Jackson*, 13 F.4th 434, 446 n.18 & 448 (5th Cir. 2021). In *Gilbert*, this Court did not even "reach the issue of Eleventh Amendment immunity" because it concluded "the district court d[id] not have subject matter jurisdiction

28

over the [] action" to start. 298 F.3d at 427 (holding federal court lacked ancillary jurisdiction over action to enforce a settlement agreement). Likewise, in *Jackson*, this Court stayed proceedings against all defendants in the district court because it would have been improper "for a federal court to proceed to the merits without certainty of jurisdiction." *Jackson*, 13 F.4th at 447.

That reasoning plainly does not apply here—Ogg is one of myriad defendants in these consolidated lawsuits, which name other county and state officials as defendants. Indeed, Ogg is not even a named defendant in two of the lawsuits below. Her standing theories do not extend to most, if any, of these other defendants, the majority of whom have raised no challenge to the district court's subject-matter jurisdiction. Resolving her standing challenge now will not impact the lower court's jurisdiction over Plaintiffs' lawsuits, which will continue apace regardless of whether Ogg remains a defendant. This is not a case where the "standing issues raised both in the appeal and the district court pertain to *all parties*" and implicate the lower court's jurisdiction to "entertain [the] lawsuit to begin with." *Jackson*, 13 F.4th at 446 n.18 (emphasis added). Accordingly, this Court should follow the ordinary rule, which—as *Gilbert* itself acknowledges—is that "appellate courts do not have jurisdiction to review on interlocutory appeal a district court's denial of a motion to dismiss based on lack of subject matter jurisdiction." *Gilbert*, 298 F.3d at 429 n.5 (citing *Catlin*, 324 U.S. at 236).

29

At bottom, Ogg makes no plausible claim that her standing arguments are "inextricably intertwined" with her immunity defense or that "review of the former . . . [is] necessary to ensure meaningful review of the latter," even assuming the latter is a "properly appealed collateral order[]." *Swint*, 514 U.S. at 51. This Court therefore lacks pendent appellate jurisdiction to consider the standing issue, regardless of whether Ogg's immunity defense is properly before the Court.

## II.   Ogg is not entitled to sovereign immunity for any claim against her.

Ogg cannot invoke sovereign immunity from Plaintiffs' claims under the Voting Rights Act, ADA, and Rehabilitation Act because Congress abrogated sovereign immunity from claims brought under those statutes. This settled principle is undisputed by Ogg and is sufficient to resolve this appeal. *See supra* § I.A. Ogg also cannot invoke sovereign immunity against Plaintiffs' constitutional claims because they fall under the exception carved out in *Ex parte Young*, 209 U.S. 123 (1908). Thus, the district court correctly denied her motion to dismiss on sovereign immunity grounds.

### A.   *Ex parte Young* applies because Ogg has the specific duty to enforce the Criminal Provisions.

The *Ex parte Young* exception "allows private parties to bring suits for declaratory relief against individual state officials acting in violation of federal law." *City of Austin v. Paxton*, 943 F.3d 993, 997-98 (5th Cir. 2019) (quotations omitted). For this exception to apply, "it is plain that [the defendant] must have some

connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. This Court has acknowledged, however, that its precedents "do not provide . . . much clarity" on "the precise scope of the requirement for a connection." *Tex. Democratic Party v. Hughs*, 860 Fed. Appx. 874, 877 (5th Cir. 2021); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("This circuit has not spoken with conviction about all relevant details of the 'connection' requirement.").

The Supreme Court recently clarified that the sole requirement for *Ex parte Young* to apply is that the defendant official have the specific duty to enforce the challenged statute. *See Whole Women's Health v. Jackson*, 142 S. Ct. 522 (2021). *Whole Women's Health* authorized a pre-enforcement challenge to S.B. 8, a Texas state law prohibiting physicians from performing certain abortions. Texas state licensing officials retained the authority to take enforcement actions against abortion providers for violating any provision of the Texas Health and Safety Code, including S.B. 8. "Eight Members of the Court h[e]ld that sovereign immunity does not bar a ***pre-enforcement*** challenge to S.B. 8 against these" licensing officials. *Whole Women's Health*, 142 S. Ct. at 525 (emphasis added). Justice Gorsuch explained:

> [T]hese particular Defendants fall within the scope of *Ex parte Young's* historic exception to state sovereign immunity [because] [e]ach of these individuals is an executive licensing official who ***may or must*** take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including S.B. 8. Accordingly, we hold that sovereign immunity does not bar the petitioners' suit against these named defendants at the motion to dismiss stage.

31

*Id.* at 535-36 (emphasis added); *see also id.* at 536 n.3 ("The petitioners may proceed against [the executive commissioner of the Texas Health and Human Services Commission] ***solely based on her authority*** to supervise licensing of abortion facilities and ambulatory surgical centers." (emphasis added)). The Court applied *Ex parte Young* even though none of the licensing officials had taken a step toward enforcement or otherwise threatened enforcement against the abortion providers. *See id.* at 535-36; *see also id.* at 542 (Thomas, J., dissenting) (noting that the Court applied *Ex parte Young* even though "none of the licensing officials has threatened enforcement proceedings against petitioners").

*Ex parte Young* likewise applies here. The Texas Court of Criminal Appeals has held that enforcing the criminal provisions of the Texas Election Code is "the specific duty of county and district attorneys." *Stephens*, 2021 WL 5917198, at *6. While Texas Election Code § 273.021 authorizes the Attorney General to prosecute election code violations, the court found this provision unconstitutional because "county and district attorneys have been bestowed with the 'exclusive responsibility and control of criminal prosecutions'" under the Texas Constitution. *Id.* (quoting *Baker v. Wade*, 743 F.2d 236, 242 n.28 (5th Cir. 1984)). Thus, "the Attorney General can prosecute with the *permission* of the local prosecutor but cannot initiate prosecution unilaterally." *Id.* at *8. *Stephens* makes clear that no state officials have a greater connection to the Criminal Provisions than district attorneys like Ogg. And

this Court must "take the word of the highest court on criminal matters of Texas as to the interpretation of its law." *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002); *see also Longoria v. Paxton*, No. 22-50110, 2022 WL 2208519, at *1 (5th Cir. June 21, 2022) (citing state court precedent as instructive on application of *Ex parte Young* to Texas law).

Ogg concedes that she has the authority to enforce the Criminal Provisions. Nonetheless, she insists that she "has no *duty* to bring such prosecutions" because she has "complete discretion whether to ever initiate criminal charges." Br. at 15 (emphasis added). That is a distinction without a difference. State officials have the "specific duty" to enforce under *Ex parte Young* even if they retain enforcement discretion. As the Supreme Court explained in *Whole Women's Health*, "Texas law impose[d] on the licensing-official defendants a duty to enforce" because they "*may* or must take enforcement actions." *Whole Women's Health*, 142 S. Ct. at 536 (emphasis added); *see, e.g.*, Tex. Occ. Code § 301.501 (state nursing board director "*may* impose an administrative penalty" on the petitioners for violating S.B. 8); Tex. Occ. Code § 301.416 ("The board is *not* required to investigate" reported violations of S.B. 8). Ogg's argument that her prosecutorial discretion removes her from *Ex parte Young's* ambit contradicts settled law.

Ogg's argument that "there is no language in the Texas Election Code that imposes upon [her] a specific duty to enforce" the Criminal Provisions likewise fails.

33

Br. at 16. It is well settled that "[t]he text of the challenged law need not actually state the official's duty to enforce it." *City of Austin*, 943 F.3d at 997-98 (citing *Ex parte Young*, 209 U.S. at 157). Although the Texas Election Code also authorized the Attorney General to enforce its criminal provisions, *Stephens* held that delegation unconstitutional and expressly stated that the "specific duty" to enforce belongs to the state's district attorneys. *Stephens*, 2021 WL 5917198, at *6. And district attorneys are tasked by with representing the State of Texas in all criminal cases in the county. Tex. Const. art. 5, § 21; Tex. Code Crim. P. Art. 2.01.

### B. Ogg has demonstrated a sufficient level of enforcement.

Ogg's specific duty to enforce the Criminal Provisions is sufficient to apply the *Ex parte Young* exception to sovereign immunity. *See Whole Women's Health*, 142 S. Ct. at 536. But even if Plaintiffs were required to also show a "demonstrated willingness to enforce" along with evidence of "compulsion or constraint," they have done both here.

This Court has explained that "if an official *can* act, and there's a significant possibility that he or she *will*, the official has engaged in enough compulsion or constraint to apply the *Young* exception." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020); *City of Austin*, 943 F.3d at 1002 (same). It is undisputed that Ogg *can* act. *See supra* at 32-33. And Plaintiffs have demonstrated a substantial likelihood that she *will* act for two reasons.

34

*First*, courts resolving First Amendment claims must "*assume* a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335-36 (5th Cir. 2020) (emphasis added). It is blackletter law that the plaintiff in such a suit "need not show that the authorities have threatened to prosecute him" to demonstrate that the threatened injury is sufficiently imminent. *Id.* at 336; *see also Barilla v. City of Hous.*, 13 F.4th 427, 433 (5th Cir. 2021) (same). "[T]he threat is latent in the existence of the statute" being challenged. *Speech First*, 979 F.3d at 336. Plaintiffs have brought First Amendment claims against Ogg and therefore need not demonstrate that Ogg has threatened enforcement to file suit.

Ogg retorts that the presumption of a credible threat to enforce "is a rule about standing, not sovereign immunity" and thus "cannot be imported into the *Ex parte Young* analysis." Br. at 19. But she cites no authority for that proposition for a reason: This Court has explained that the *Ex parte Young* inquiry "significantly overlap[s]" with Article III standing, such that "it may be the case that an official's connection to enforcement is satisfied when standing has been satisfied." *City of Austin*, 943 F.3d at 1002; *see also Abbott*, 961 F.3d at 401 (same). And Ogg's insistence that her proposed non-enforcement stipulation amounts to "compelling contrary evidence" strains credulity because the stipulation was not agreed to by the

parties and, in any event, was severely limited in its scope. *See infra* at 43-44. Ogg may enforce the Criminal Provisions at any time.

*Second*, Ogg is likely to enforce because the Attorney General and Secretary of State have significant control and influence over her enforcement discretion, *see* Tex. Elec. Code §§ 273.001, 273.002, 273.022, and have threatened enforcement of the Criminal Provisions. The Attorney General, by his own admission, retains "broad investigatory powers" under the Texas Election Code. State's Br. at 49, *LUPE v. Scott*, No. 22-50775 (5th Cir. Dec. 9, 2022). Those powers include the authority to "direct the county or district attorney . . . to *conduct* or *assist* the attorney general in conducting the investigation." *See* Tex. Elec. Code § 273.002 (emphasis added); *see also id.* § 273.001 (district attorneys must investigate alleged violations referred to them). Plaintiffs have alleged that the Attorney General has spent substantial resources investigating violations of the Texas Election Code since he took office in 2015 and has escalated his efforts in recent election cycles. ROA.6573 ¶ 199 (alleging that the Attorney General spent over 22,000 staff hours investigating election code violations in 2020, alone); ROA.6393. And the Attorney General formed a special task force to enforce S.B. 1 and announced publicly that his office will "prosecute voter fraud everywhere we find it!" ROA.6541, 6573. True, the Attorney General must now seek the permission of district attorneys before commencing a prosecution. *See Stephens*, 2021 WL 5917198. But Plaintiffs have

alleged that he *will* seek such permission from each district attorney named in this action including Ogg. ROA.6158; ROA.6275. Indeed, Ogg's proposed stipulation was noticeably silent on whether she will refrain from granting state officials permission to enforce, even as Ogg purportedly offered to temporarily refrain from enforcing S.B. 1. Thus, the demonstrated willingness of the Attorney General to seek enforcement evinces a substantial likelihood that Ogg will initiate a prosecution.

The Secretary of State likewise has significant influence over Ogg's enforcement discretion and has threatened enforcement. Texas law requires the Secretary to refer allegations of Election Code violations to prosecutors. *See* Tex. Elec. Code § 31.006; *see also id.* 273.001 (requiring district attorneys to investigate allegations of "criminal conduct in connection with the election" presented to them). Here, Plaintiffs have alleged that the Texas legislature recently approved $4 million for the creation of an Election Audit Division in the Secretary's office, and that the Secretary has stated that he will use the division to "ensure any cases of illegal voting or election crimes are investigated by the proper law enforcement authorities"— including violations of S.B. 1, specifically. ROA.6274 & n.4; ROA.6408.

These allegations demonstrate sufficient enforcement under *Ex parte Young*. This Court has explained that "[p]anels in this circuit have defined 'enforcement' as 'typically involving compulsion or constraint.'" *City of Austin*, 943 F.3d at 1000 (cleaned up). When the threat of enforcement constrains a plaintiff's activities, it

"effectively ensure[s]" that the challenged statute is "enforced from start to finish." *Id.* at 1001 (quoting *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (cleaned up)). Here, the threat of enforcement by Ogg has constrained Plaintiffs from engaging in activities protected under the First Amendment for fear of prosecution. Section 7.04 of S.B. 1 broadly prohibits interactions with voters in the presence of a ballot, and "[t]he extensive reach of these restrictions and the accompanying threat of criminal . . . penalties" has "deter[red] Plaintiffs' members and volunteers from participating in Plaintiffs' voter education and GOTV efforts, thereby limiting the means by which Plaintiffs and their constituents communicate with voters and engage in the political process." ROA.6590 ¶ 283 (LULAC Plaintiffs); ROA.6322-6332 ¶¶ 195–239 (OCA Plaintiffs) (similar). For example, Plaintiffs have alleged that they have instructed their members and supporters "not to provide direct, in-person voting assistance" and have ceased "providing volunteers with food, student stipends, and other incentives that could be construed as illegal 'compensation.'" ROA.6326. These allegations of compulsion and constraint are plainly sufficient under this Court's sovereign immunity cases.

Ogg's argument also invites an absurd outcome in which no valid officer can be sued to provide relief from constitutional violations, regardless of whether Plaintiffs have met the standard in *Whole Women's Health* or even satisfied each of

this Court's "guideposts" under the *Ex parte Young* doctrine. *Scott*, 28 F.4th at 672. Indeed, the Attorney General is presently arguing to this Court that he too cannot be sued in this case under *Ex Parte Young* in light of *Stephens*—notwithstanding his "broad investigatory powers" and "public statements touting his office's eagerness to prosecute entities and individuals" under S.B. 1. State's Br. at 47, 49 (cleaned up). Under Ogg's view, the Attorney General cannot be sued because he lacks the unilateral power to prosecute. And Ogg herself cannot be sued despite having the power to prosecute because she has not threatened enforcement. The result is a "Catch 22" where the Attorney General and Ogg constrain Plaintiffs in violation of the Constitution but neither can be enjoined from doing so—a nonsensical outcome that is flatly inconsistent with *Whole Women's Health* and leaves Plaintiffs without any recourse for constitutional violations.

Finally, Ogg is wrong that litigating against individual district attorneys risks "inconsistent positions from 'the State.'" Br. at 24. Plaintiffs have named individual district attorneys as defendants because the State continues to invoke sovereign immunity in election-related lawsuits, and this Court has explained that "local officials" often have a closer enforcement connection under the Election Code. *See Abbott*, 978 F.3d at 179. The Texas Court of Criminal Appeals, in turn, made clear in *Stephens* that Ogg is such an official. *Stephens*, 2021 WL 5917198, at *6. And to ensure uniformity in the application of election laws, both the Attorney General and

other state officials can intervene to advance the State's position—as they have done repeatedly. *See, e.g.*, *Tex. State LULAC v. Elfant*, 52 F.4th 248, 252 (5th Cir. 2022) (Attorney General and two county election officials granted intervention to defend Texas election statute); *Vote.org v. Callanen*, 39 F.4th 297, 302 (5th Cir. 2022) (same). Even under this Court's pre-*Whole Women's Health* framework, Ogg is an appropriate defendant for claims seeking to enjoin criminal enforcement of the Election Code.

## III.   The district court properly concluded that Plaintiffs have plausibly alleged standing for their claims against Ogg.

Even if Ogg's argument that Plaintiffs lack standing were properly before this Court, it would provide no basis for reversal. Ogg challenges Plaintiffs' standing chiefly on the basis that neither they nor their members engage in conduct that puts them at risk of running afoul of S.B. 1's Criminal Provisions. *See* Br. at 27. That is wrong on both counts. Plaintiffs have plausibly alleged cognizable injuries because the Criminal Provisions directly harm their members, including by chilling their First Amendment right to educate, mobilize, and assist potential voters. Moreover, S.B. 1 has harmed Plaintiffs directly as organizations by chilling their speech and forcing them to divert resources from routine and mission-critical activities to protect their members' and constituents' right to vote. These injuries are traceable to Ogg because Texas law charges her with enforcing the Criminal Provisions. Thus, although "the presence of one party with standing is sufficient to satisfy Article III's case-or-

controversy requirement," *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006), all Plaintiffs have plausibly alleged standing to sue Ogg.

**A.     Plaintiffs have plausibly alleged injuries to their members.**

To start, Plaintiffs have plausibly alleged that Ogg's threatened enforcement of the Criminal Provisions violates their members' First Amendment rights by deterring them from engaging in protected conduct. *E.g.*, ROA.6577-78 ¶ 222; ROA.6590 ¶ 283; ROA.6268 ¶ 217. It is well settled that a plaintiff bringing such a pre-enforcement challenge "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Barilla*, 13 F.4th at 431. It is enough to establish injury in fact if the Plaintiff "(1) has an intention to engage in a course of conduct arguably affected with a constitutional interest, (2) his intended future conduct is arguably . . . proscribed by [the policy in question], and (3) the threat of future enforcement of the [challenged policies] is substantial." *Id* at 431-32. (quoting *Speech First*, 979 F.3d at 330) (internal quotation marks omitted). Plaintiffs have satisfied each factor.

*First*, Plaintiffs have plausibly alleged that they intend to engage in conduct affected with a constitutional interest. Before S.B. 1, Plaintiffs' members routinely engaged voters by answering their questions, educating them about voting requirements, and helping them form a plan to vote. *See* ROA.6590 ¶ 285 (alleging LULAC Plaintiffs' members participate in "voter education and GOTV efforts");

41

ROA.6326 ¶ 210 (alleging OCA-GH Plaintiffs' members "engage in in-person voter outreach, such as door-to-door flyer distribution on policies directly affecting the AAPI community"). These activities are protected under the First Amendment. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 389 (5th Cir. 2013) (holding "some voter registration activities involve speech—'urging' citizens to register; 'distributing' voter registration forms; 'helping' voters fill out their forms; and 'asking' for information to verify that registrations were processed successfully").

*Second*, the Criminal Provisions arguably proscribe this conduct. For example, the Voter Interaction Ban (S.B. 1 § 7.04) prohibits compensation for "in-person interaction . . . intended to deliver votes for a specific candidate or measure" while in the "physical presence" of a ballot. Tex. Elec. Code § 276.015. The Ban "is so broadly defined" that it sweeps in "everything from core political speech to everyday common courtesy," even "discussing the merits of a candidate or ballot measure" or "telling a voter where to park when they arrive to drop off their ballot." ROA.6589-90 ¶ 281; *see also* ROA.6589-91 ¶¶ 281-86 (alleging Voter Interaction Ban encompasses conduct of "[LULAC] Plaintiffs' members and employees"). As a result, Plaintiffs' members have already had their expressive activity chilled by the Criminal Provisions. *See, e.g.*, ROA.6325-27 ¶¶ 208-13; ROA.6538 ¶¶ 20, 24-25, 277-286 (alleging LULAC Plaintiffs' members engage in similar activities that will likewise be chilled by the Voter Interaction Ban).

*Third*, Plaintiffs have plausibly alleged a substantial threat of enforcement. While Ogg asserts that there are no allegations that she intends to enforce the Criminal Provisions, Br. at 29, courts will "*assume* a credible threat of prosecution in the absence of compelling contrary evidence" in First Amendment challenges. *Speech First*, 979 F.3d at 335; *see also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (holding plaintiffs had standing where, "if their interpretation of the statute [was] correct, [they would] have [had] to take significant and costly compliance measures or risk criminal prosecution"). And even if that were not so, Plaintiffs' allegations are more than sufficient to show that the likelihood of enforcement is substantial. *See supra* at 35-37.

Ogg has identified no "compelling contrary evidence" that would preclude the Court from assuming a credible threat exists. While Ogg points to her proposed "stipulation" that she would forgo enforcing the Criminal Provisions until this lawsuit is resolved, Br. at 20-21, the stipulation was never agreed to by the parties, leaving her free to enforce at any time. The proposed stipulation did not bind Ogg to this Court's ruling on the merits anyways. Nor did it rule out rejecting any requests by the Attorney General to authorize a prosecution by that office. Instead, it left Ogg free to comply with requests by the Attorney General or Secretary to assist in those offices' investigations into Election Code violations. Plaintiffs have therefore

43

plausibly alleged that they face a credible risk of prosecution for engaging in constitutionally protected activities.

In addition to their speech-related injuries, Plaintiffs have also plausibly alleged that their members are harmed by the threat of prosecution for receiving or offering assistance to vote. For example, under Section 6.06, OCA-GH's members who are "voters using assistance [or] volunteers and canvassers providing assistance" could face criminal charges because they might "be construed as receiving 'benefits' or 'compensation' for assisting a voter." ROA.6312-6313 ¶ 166; *see also id.* (explaining OCA-GH provides volunteers with benefits as an incentive to volunteer). They are not alone: Members of other Plaintiff organizations face similar threats. *E.g.*, ROA.6313–6318 ¶¶ 167–175 (LWVTX, REVUP-Texas, and WDAF); ROA.6587 ¶ 271 (LULAC and the Alliance); ROA.6148-6149 ¶ 59 (Arc of Texas).

Relatedly, Section 6.04 and Section 6.05—which expose voter assistors to criminal liability—burden members' right to vote by preventing them from receiving the assistance that they need to cast their ballots. Laura Halvorson, a member of both the Arc of Texas and REVUP-Texas, "is not able to mark or submit the ballot herself and requires assistance putting the ballot into the Scantron machine and marking the ballot on the touch screen." ROA.6148-6149 ¶ 59; ROA.6316 ¶ 172. She also sometimes requires an "assistor to explain the wording of the lengthy amendments

which are not in plain language. . . ." ROA.6148-6149 ¶ 59. But S.B. 1's provisions—including Section 6.04 and Section 6.05—have deprived her of that assistance, and therefore of the ability to vote because her "personal care attendants have stated they may be unwilling to assist her with voting in the future for fear of prosecution." *Id.*; *see also* ROA.6147-6148 ¶ 58; ROA.6310-6311 ¶ 160 (alleging OCA-GH's members are injured by Section 6.04); ROA.6587 ¶¶ 270, 271 (similar for LULAC and the Alliance); ROA.6432 ¶ 179 (similar for SVREP); ROA.6313 ¶ 168 (LWVTX); ROA.6313-6317 ¶¶ 169-173 (REVUP-Texas).

Ogg is thus simply wrong when she argues that Plaintiffs have failed to allege that their members intend to engage in conduct that risks violating S.B. 1's new or modified criminal offenses. And although she does not dispute the point, Plaintiffs further satisfy any remaining requirements for associational standing. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (identifying germaneness and no need for participation of individual members as additional associational standing elements). Plaintiffs—voting and civil rights organizations—each share missions that include, among other things, promoting access to the ballot box and ensuring that their members and constituents can vote. ROA.6139-44 ¶¶ 38, 43, 49 (HAUL Plaintiffs); ROA.6262-70 ¶¶ 14, 19, 23, 32 (OCA Plaintiffs); ROA.6537-41 ¶¶ 19, 21, 23, 25 (LULAC Plaintiffs). Their consolidated lawsuits, which seek declaratory and injunctive relief from a law that

makes it more difficult to vote in Texas, are plainly germane to Plaintiffs' missions. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). And neither the claims asserted, nor the injunctive and declaratory relief requested, requires the participation of individual members as parties. *See Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 505 (5th Cir. 2021)*, cert. denied,* 142 S. Ct. 2852 (2022); *Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 553.

### B. Plaintiffs have plausibly alleged organizational injuries based on their own chilled speech and their diversion of resources.

Plaintiffs have likewise plausibly alleged that they have been injured as organizations, both because S.B. 1 chills their constitutionally protected activities and because the law forces them to divert resources to protect their members and pursue their missions.

As to the former, S.B. 1 operates directly on Plaintiffs by criminalizing conduct in which they routinely engage. They, too, are subject to the Voter Interaction Ban, which "encompass[es] a wide range of interactions and conversations that may occur between Plaintiffs . . . and voters" as part of their efforts to promote access to the ballot booth. ROA.6681 ¶ 298 (LULAC Plaintiffs); ROA.6325–6327 ¶¶ 208–213 (similar for OCA Plaintiffs).

Similarly, Section 6.06—which bars providing or receiving compensation for assisting mail voters—is so broad that it prohibits OCA-GH from providing even "nominal gifts" to volunteers who assist members with limited English proficiency

or disabilities. ROA.6312-13 ¶ 166. In prior years, OCA-GH provided those volunteers with *de minimis* "compensation" like "meals, beverages, snacks, academic credit, [or] shirts[.]" *Id*. It also previously "pa[id] between $12-20 per hour to independent contractors for literature-drop canvassing." *Id*. But because "[l]imited English-speaking voters often ask OCA-GH volunteers and canvassers voting-related questions and seek their assistance," OCA-GH is arguably subject to criminal sanctions if it provides "compensation" to those individuals. *Id*. It operates similarly on the other Plaintiff organizations. *E.g.*, ROA.6313-14 ¶ 169 (REVUP-Texas); ROA.6317-18 ¶ 175 (WDAF).

Accordingly, the Criminal Provisions directly regulate Plaintiffs and chill their speech by "limit[ing] the scope of contact that [they] are permitted to have with their members and the communities they serve and . . . limit[ing] their ability to achieve their respective organizational missions, such as increasing voter turnout, providing education to voters, providing proper assistance to voters when needed, and advancing social and political change . . . ." ROA.6326 ¶ 209 (OCA-GH).

Plaintiffs are also directly injured as organizations because S.B. 1 has forced them to divert resources from routine and mission-critical activities to protect their members and constituents' right to vote. An organization has Article III standing when, as here, unlawful government action "perceptibly impair[s]" its ability to fulfill its mission by causing it to divert resources to "mitigate[] [the] real-world

impact on [its] members and the public." *OCA-Greater Houston*, 867 F.3d at 612; *see also Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 360 (5th Cir. 1999) ("[A]n organization has standing to sue on its own behalf where it devotes resources to counteract a defendant's allegedly unlawful practices.").

As discussed, S.B. 1's Criminal Provisions have perceptibly impaired Plaintiffs' ability to pursue their respective missions by restricting interactions with voters and curtailing election officials' ability to remove disruptive partisan poll watchers—which will multiply instances of voter harassment and intimidation that Plaintiffs' members and constituents will suffer. *See supra* at 6; ROA.6556 ¶ 109, ROA.6572 ¶ 194.

These restrictions impair Plaintiffs' missions and require them to divert their resources to protect their members and constituents' right to vote. LULAC for instance has to "divert resources from other programs and activities to address the adverse impacts [of] S.B. 1 and to assist its members and constituents in surmounting new barriers to registration and voting." ROA.6538 ¶ 20; *see also* ROA.6538-40 ¶¶ 21-25 (similar allegations from other LULAC Plaintiffs). OCA-GH has been forced to "spend less time and money on its normal programming efforts . . . and will reach fewer voters overall," because it must divert resources "counteracting SB 1's various unlawful effects." ROA.6263-64 ¶ 17; *see also* ROA.6263-67, 6270-71, 6312-14 ¶¶ 17, 21, 25, 30, 33, 166-169 (similar allegations from OCA Plaintiffs). MFV has

"divert[ed] personnel, time, and resources away from its routine community activities" and instead used those resources to "increase voter awareness, education, and support to comply with the expansive new rules of SB 1." ROA.6151 ¶ 64; *see also* ROA.6140, 6143, 6151, 6221 ¶¶ 41, 48, 64, 268 (similar allegations from MFV Plaintiffs). These allegations are sufficient to plausibly allege injury in fact at the motion-to-dismiss stage. *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1115 (11th Cir. 2022) (holding organization "sufficiently plead the injury in fact element of standing" when it alleged that "it ha[d] diverted resources . . . from its "civic engagement, voter registration and get out the vote work" to "educat[e] . . . voters about how to navigate the mail voting process" (alteration adopted) (internal quotations omitted)). The district court correctly ruled that these injuries are cognizable and that an injunction against the Criminal Provisions will at least partially redress Plaintiffs' injuries. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021).

## C.    Plaintiffs' injuries are traceable to Ogg.

Plaintiffs have also plausibly alleged "a fairly traceable connection between [their] injur[ies] and the complained-of conduct of the defendant." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). This Court has explained that a plaintiff challenging an election law satisfies the traceability requirement when the plaintiff sues a defendant who has an "'enforcement connection with the challenged

statute.'" *See OCA-Greater Houston v. Texas*, 867 F.3d at 613–14 (quoting *Okpalobi v. Foster*, 244 F.3d 405, 427 n.35 (5th Cir. 2001)). Plaintiffs clear that modest bar. Ogg is charged with enforcing the Criminal Provisions, *supra* at 32-33, and Plaintiffs' request for an injunction against her enforcement authority would redress their injuries above. *See* ROA.6543 ¶ 33; ROA.6156 ¶ 77, ROA.6277-78 ¶ 48.

## CONCLUSION

For the reasons above, this Court should dismiss the appeal or, alternatively, affirm the district court's August 2, 2022 interlocutory order granting-in-part and denying-in-part Appellant Ogg's motion to dismiss.

Dated: December 16, 2022                    Respectfully Submitted,

                                         <u>/s/ Uzoma N. Nkwonta</u>

J. Michael Showalter                    Uzoma N. Nkwonta
ARENTFOX SCHIFF LLP                  *Counsel of Record*
South Wacker Drive, Suite 7100        Christopher D. Dodge
Chicago, IL 60606                       Graham W. White
j.michael.showalter@afslaw.com         Noah B. Baron
Tel: (312) 258-5561                     Michael B. Jones
                                        ELIAS LAW GROUP LLP
Derek Ha                                250 Massachusetts Ave. NW
Eitan Berkowitz                         Suite 400
ARENTFOX SCHIFF LLP                  Washington, DC 20001
44 Montgomery St., 38th Floor          unkwonta@elias.law
San Francisco, CA 94104
Tel: (415) 757-5500                     *Counsel of Record for Plaintiffs-*
                                        *Appellees and Attorneys for*
Jennifer A. Holmes                      *Plaintiffs LULAC Texas, Voto*
NAACP LEGAL DEFENSE AND              *Latino, Texas Alliance for Retired*
EDUCATIONAL FUND, INC.               *Americans, and Texas AFT*

700 14th Street N.W. Suite 600
Washington, DC 2005
jholmes@naacpldf.org
Tel: (202) 683-1300

Sam Spital
Kathryn Sadasivan
Amir Badat
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
sspital@naacpldf.org
ksadasivan@naacpldf.org
abadat@naacpldf.org

Kenneth Broughton
REED SMITH LLP
811 Main Street
Suite 1700
Houston, TX 77002
kbroughton@reedsmith.com
Tel: (713) 469-3819

*Counsel for Plaintiffs Houston
Area Urban League; Delta Sigma
Theta Sorority, Inc; The Arc of
Texas; and Jeffrey Lamar
Clemmons*

Courtney Hostetler
Ron Fein
John Bonifaz
Ben Clements
FREE SPEECH FOR THE
PEOPLE
1320 Centre Street, Suite 405
Newton, MA 02459

Zachary Dolling
Hani Mirza
TEXAS CIVIL RIGHTS
PROJECT
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
zachary@texascivilrightsproject.org
hani@texascivilrightsproject.org

Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334
acepedaderieux@aclu.org

Thomas Buser-Clancy
Texas Bar No. 24078344
Savannah Kumar
Texas Bar No. 24120098
ACLU FOUNDATION OF
TEXAS, INC.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752
tbuser-clancy@aclutx.org
skumar@aclutx.org

Lisa Snead
Peter Hofer
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
lsnead@drtx.org

(617) 249-3015
chostetler@freespeechforpeople.org
rfein@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org

Elijah Watkins
STOEL RIVES LLP
101 S. Capital Boulevard, Suite 1900
Boise, ID 83702
Telephone: (208) 389-9000
elijah.watkins@stoel.com

Bradley Prowant
STOEL RIVES LLP
33 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 373-8800
bradley.prowant@stoel.com

*Counsel for Plaintiffs Mi Familia Vota, Marla López, Marlon López, and Paul Rutledge*

phofer@drtx.org

Jerry Vattamala
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)
jvattamala@aaldef.org

Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
(202) 639-6000
jamunson@jenner.com

*Counsel for Plaintiffs OCA-Greater Houston, et al.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2) because this document contains 12,157 words, excluding parts exempted by the Rules.

This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for the Plaintiffs-Appellees are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta